**In the United States District Court
for the District of Kansas**

―――――――

Case No. 21-cv-01012-TC

―――――――

LARRY T. R.,[1]

*Plaintiff*

v.

KILOLO KIJAKAZI,[2]
ACTING COMMISSIONER OF SOCIAL SECURITY,

*Defendant*

―――――――

**MEMORANDUM AND ORDER**

Plaintiff Larry R. claims that he cannot work due to several physical and mental disabilities. He seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A). For the following reasons, the Commissioner's final decision is affirmed.

―――――――

[1] Plaintiff will be referred to only by first name followed by initials to protect his privacy. *See, e.g.*, *Joseph M. v. Kijakazi*, No. 22-1065, 2023 WL 2241526, at *5 (D. Kan. Feb. 27, 2023).

[2] Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security on July 9, 2021. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kijakazi is substituted for the former Commissioner, Andrew M. Saul, as the defendant. No further action is necessary. *See* §§ 42 U.S.C. 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."); 1383(c)(3) (same for Supplemental Security Income benefits).

# I

## A

**1.** Federal district courts have jurisdiction, upon timely request, to review the Commissioner's final administrative decisions. 42 U.S.C. § 405(g). These cases require a careful review of the record to determine whether "substantial evidence supports the factual findings and whether the [administrative law judge] applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). Evidence in support of a finding is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion," and therefore must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The ALJ's findings must be grounded in substantial evidence and demonstrate that the ALJ "consider[ed] all relevant medical evidence in making those findings." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989)). Consequently, the court will "not reweigh the evidence or try the issues de novo," but it will "meticulously examine the record as a whole . . . to determine if the substantiality test has been met." *Id.* (citations omitted).

**2.** To evaluate an application for disability benefits, the Commissioner uses a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4) (disability insurance), 416.920(a)(4) (supplemental security income); *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Wilson*, 602 F.3d at 1139 (quoting *Lax*, 489 F.3d at 1084). The claimant bears the burden of proof for the first four steps, but the Commissioner does for the fifth. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset of the disability, whether the claimant has any severe impairments, and whether any of those impairments meets or equals the severity of any impairment in the Listing of Impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The fourth and fifth steps of the analysis depend on the claimant's residual functional capacity (RFC), which the Commissioner assesses

after completing the third analytical step. 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is the most the claimant can do despite limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1). The Commissioner determines the claimant's RFC based on all relevant evidence in the record. SSR 16-3p, 2017 WL 5180304, at *4–*5 (Oct. 25, 2017).

After analyzing the claimant's RFC, the Commissioner proceeds to the fourth and fifth steps of the analysis. At step four, the Commissioner determines whether the claimant can perform his or her past relevant work in light of his or her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id.* At step five, the Commissioner bears the burden to show—in light of the claimant's RFC, age, education, and work experience—that suitable work "exists in significant numbers in the national economy." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c)(2), 416.960(c)(2).

**B**

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since April 20, 2014. Adm. Rec. at 32.[3] At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; migraine headaches; chronic hip impingement; right carpal tunnel syndrome and cubital tunnel syndrome; asthma; left cubital tunnel syndrome and ulnar tunnel syndrome; depression; and schizoaffective disorder. *Id.* The ALJ classified Plaintiff's gastroesophageal reflux disease, hiatal hernia, Schatzki's ring, history of cataracts, and obesity as nonsevere medically determinable impairments. *Id.* at 33. The ALJ found that osteoarthritis throughout Plaintiff's entire body and scoliosis were "not medically determinable impairments due to a lack of objective evidence." *Id.*

At step three, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. Adm. Rec. at 33–34. Thus, "disability [could not] be established on the medical facts alone." *Id.* at 34. Regarding Plaintiff's migraines and fibromyalgia, the ALJ found that neither of these are listed impairments

---

[3] All references to the parties' briefs are to the page numbers assigned by CM/ECF except for factual references to the Administrative Record (Adm. Rec.).

3

and that no evidence in the record indicated that either of these impairments medically equaled the criteria of listings. *Id.* The ALJ arrived at the same conclusions for Plaintiff's mental impairments. *Id.* at 34–35.

In connection with step four of the sequential evaluation process, the ALJ determined that Plaintiff had the RFC to perform sedentary work with the following exceptions:

> [H]e can never climb stairs, ramps, ladders, ropes, and scaffolds; occasionally balance and stoop, but never kneel, crouch, or crawl; he should be allowed to use a cane to assist with ambulation; no pushing or pulling with the upper or lower extremities; occasionally reach overhead; frequently but not constantly handle and finger; he should avoid concentrated exposure to extreme heat and cold, excessive vibrations, pulmonary irritants, unprotected heights, and hazardous machinery; he can understand, remember, and carry out simple instructions, perform non-detailed routine and repetitive tasks; maintain concentration and attention for two-hour segments over an eight-hour period; make simple work related decisions; adapt to routine or simple workplace changes; and can perform work at a normal pace without high-rate production quotas; the individual should not be an integral part of a team; the job should require no contact with the public; and no more than occasional contact with coworkers and supervisors.

Adm. Rec. at 35–36. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. *Id.* at 40. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* at 41. Thus, the ALJ concluded that Plaintiff had not been disabled from April 20, 2014, through the date of the decision. *Id.* at 42.

## C

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income in July 2017, alleging disability beginning December 15, 2012. Doc. 17 at 1. After exhausting

his administrative remedies before the Social Security Administration, Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). *Id.* Plaintiff claims the ALJ erred in three respects. First, Plaintiff claims the ALJ erred at step five of the analysis by failing to resolve the apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT), by finding that Plaintiff could perform jobs which the evidence indicated he could not, and by finding that certain of those jobs exist in significant numbers nationally. *Id.* at 5–10. Second, Plaintiff asserts the ALJ erred in assessing his RFC by failing to adequately account for his mental impairments, *id.* at 10–13; fibromyalgia, *id.* at 13–16; and migraine headaches, *id.* at 16–18. Finally, Plaintiff claims the ALJ erred in assessing his RFC by failing to adequately consider Dr. Bulcock's opinion, *id.* at 18–21, and the appropriate factors when evaluating Plaintiff's subjective statements of his symptoms, *id.* at 21–27.

## II

The ALJ's decision is supported by substantial evidence and the Commissioner's final decision is affirmed. There is no step five error, either in an unresolved conflict or in the ALJ's analysis of jobs Plaintiff can perform; the ALJ adequately accounted for Plaintiff's mental impairments, fibromyalgia, and migraine headaches; and the ALJ applied the correct legal standard in evaluating Dr. Bulcock's opinion as well as Plaintiff's subjective symptoms.

### A

Plaintiff argues the ALJ erred at step five by concluding he could perform jobs that exceeded the limitations the ALJ found when determining Plaintiff's RFC. Doc. 17 at 5–10; Doc. 24 at 5–8. But contrary to that assertion, there is no unresolved conflict between the DOT, the vocational expert's testimony, and the ALJ's decision which would require reversal. Instead, the Commissioner's decision is supported by substantial evidence.

First, Plaintiff asserts that two of the jobs the expert identified—eyeglass polisher and egg processor—do not meet the criteria the ALJ found Plaintiff capable of based on his RFC. Doc. 17 at 5–6; Doc. 24 at 5–6. The ALJ determined that Plaintiff can "perform non-detailed routine and repetitive tasks," Adm. Rec. at 36, and that the state agency psychological consultants "appropriately restricted [Plaintiff] to simple, two-step instructions," *id.* at 39. But the eyeglass polisher and egg

5

processor jobs have a reasoning development level of 2, which "requires the educational background to carry out detailed but uninvolved written instructions." Doc. 17 at 5.

Social Security Ruling 00-4p "requires that an ALJ must inquire about and resolve any conflicts between a Vocational Expert's . . . testimony regarding a job and the description of that job in the [DOT]." *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009). The ALJ must ask the expert "if the evidence he or she has provided conflicts with information provided in the DOT" and, if the "evidence *appears* to conflict with the DOT, . . . obtain a reasonable explanation for the apparent conflict." *Id.* at 1173 n.6 (quoting SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)) (emphasis added).

Plaintiff contends the conflict in this case is akin to that in *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Doc. 17 at 6. But *Hackett* is unpersuasive as to the presence of a conflict because it is factually dissimilar. There, a finding that the plaintiff was limited to "simple and routine work tasks" was deemed inconsistent with *reasoning level 3* jobs. *Hackett*, 395 F.3d at 1176. Here, the ALJ found Plaintiff could only perform "non-detailed routine and repetitive tasks," Adm. Rec. at 36, and the jobs at issue are reasoning level 2, Doc. 17 at 5 (citing DICOT 713.684-038, 1991 WL 679267; DICOT 559.687-034, 1991 WL 683787). Indeed, the court in *Hackett* found that the plaintiff's RFC, which mirrors Plaintiff's here, "appear[ed] more consistent" with reasoning level 2 jobs. *Hackett*, 395 F.3d at 1176. Other courts have found similar limitations consistent with reasoning level 2 jobs. *See, e.g.*, *Karen Jean M. v. Saul*, No. 19-2455, 2020 WL 5057488, at *11, *14 (D. Kan. Aug. 27, 2020) (finding limitation to "perform simple, routine, and repetitive tasks" not inconsistent with reasoning level 2 jobs).

The requirements of the two jobs at issue—eyeglass polisher and egg processor—are consistent with Plaintiff's RFC. Both jobs are classified as specific vocational preparation level two, or unskilled. DICOT 559.687-034, 1991 WL 683787 (egg processor); DICOT 713.684-038, 1991 WL 679267 (eyeglass polisher); *Chavez v. Barnhart*, 126 F. App'x 434, 436 (10th Cir. 2005) ("[A] [specific vocational preparation level] of two is in the class of unskilled work . . . ." (citation omitted)). Unskilled work "needs little or no judgment to do simple duties." 20 C.F.R. § 416.968(a). The ALJ specifically asked the vocational expert whether her testimony was consistent with the DOT and its companion publications, and the expert responded "yes". Adm. Rec. at 79. The

ALJ appears to have found no actual or apparent conflict as to instructions, and Plaintiff provides no support that this finding was erroneous. Rather, the vocational expert "is the expert in vocational matters, familiar with jobs in the national economy," and "she testified the job[s] . . . could be performed within the RFC assessed by the ALJ." *Kyle Edward Victor G. v. Saul*, No. 19-2518, 2020 WL 3960422, at *9 (D. Kan. July 13, 2020). Plaintiff's argument therefore fails.

Second, Plaintiff claims the ALJ's limitation on pushing and pulling conflicts with the three jobs identified, all of which require "occasional pushing and pulling of up to ten pounds." Doc. 17 at 6–7; Doc. 24 at 6–8. All three jobs—egg processor, production checker,[4] and eyeglass polisher—are sedentary and involve "exerting up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects, including the human body." Adm. Rec. at 42; DICOT 559.687-034, 1991 WL 683787 (egg processor); DICOT 669.687-014, 1991 WL 686074 (production checker); DICOT 713.684-038, 1991 WL 679267 (eyeglass polisher). The vocational expert, Janice Hastert, stated that her testimony regarding jobs Plaintiff could perform was consistent with the DOT, "although [she] supplemented that regarding the issues not specifically addressed in the DOT, such as pushing or pulling with the upper and lower extremities," with her "experience in the placement and evaluation of individuals." Adm. Rec. at 79–80, 42. A vocational expert is permitted to supplement and "clarif[y] how [the DOT's] broad categorizations apply to [a] specific case." *Segovia v. Astrue*, 226 F. App'x 801, 804 (10th Cir. 2007). And Hastert specifically stated that her jobs recommendation would not change given the ALJ's hypothetical involving an individual who could not push or pull with the upper or lower extremities. Adm. Rec. at 78. The ALJ concluded that, based on Hastert's testimony, there was a reasonable explanation for the conflict and, as a result, the ALJ could (and did) rely on that testimony. *Id.* at 42. This conclusion was permissible. *Rogers v. Astrue*, 312 F. App'x

---

[4] Plaintiff refers to this job as "wooden dowel inspector" rather than "production checker" in several instances. Doc. 17 at 6–8. *But see id.* at 3. While the DOT refers to this job as dowel inspector, DICOT 669.687-014, 1991 WL 686074, production checker will be used as it was used by both the vocational expert and the ALJ, Adm. Rec. at 78, 42; and because they appear to be the same job, *see Schassar v. Astrue*, No. 08-2546, 2009 WL 3241597, at *1 (D. Kan. Oct. 5, 2009) (using the term production checker); Doc. 23 at 20 n.9.

7

138, 142 (10th Cir. 2009) (finding a conflict was reasonably explained based on the vocational expert's testimony regarding "his professional placement experience"); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (explaining that "reasonable explanations" for conflicts include "[i]nformation about a particular job's requirements . . . from a [vocational expert]'s . . . experience in job placement").

Third, Plaintiff briefly argues that the ALJ erred by not inquiring into and resolving a conflict between the vocational expert's testimony and the Occupational Outlook Handbook. Doc. 17 at 7–8. Hastert testified that Plaintiff could perform the job of eyeglass polisher. *Id.* at 7; Adm. Rec. at 42. That job, according to Plaintiff, fits the Handbook's "title of 'machine tenders,' which requires closer interaction throughout the first few weeks on the job with coworkers and supervisors." Doc. 17 at 7. That conflicts with the ALJ's findings, Plaintiff argues, because the ALJ had determined he was limited to only "occasional contact with coworkers and supervisors, and that deviation requires further explanation." *Id.* at 7–8 (citing *Anders v. Berryhill*, 688 F. App'x 514, 518 (10th Cir. 2017)). It is not entirely clear that there is a conflict. But, even if there is, it is not clear that the ALJ was obligated to resolve it.

Plaintiff provides no support for the theory that an ALJ must go through the same steps when testimony conflicts with the Handbook as when it conflicts with the DOT. Social Security Ruling 00-4p requires only that an ALJ give a reasonable explanation when there is a conflict between an expert's opinion and the DOT. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). *Anders* did not reach "whether the agency must (or should) take notice of the [Handbook] and explain any deviation." 688 F. App'x at 518. Instead, the Tenth Circuit found no deviation in need of explanation. *Id.* at 518–19. And drawing from the text of SSR 00-4p, other circuits have held that ALJs are not required to explain deviations between expert testimony and the Handbook. *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009). District courts in Kansas have followed that approach. *Moffit v. Berryhill*, No. 17 4015, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (citing *Poe*, 342 F. App'x at 158); *Rodney L. B. v. Kijakazi*, No. 21-1162, 2022 WL 4465072, at *14 (D. Kan. Sept. 26, 2022) (same). As a result, Plaintiff's assignment of error is unfounded.

Finally, Plaintiff contends that the number of production checker jobs—"approximately 16,000 . . . nationwide," Adm. Rec. at 42—is

too insignificant to avoid a disability finding, Doc. 17 at 8–10. That contention has two flaws. First, there is no unresolved conflict with the DOT and, as a result, the evidence supports the ALJ's conclusion that Plaintiff can perform all three jobs identified, not just production checker. Adm. Rec. at 42. Thus, the proper focus is not on this single job. The ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," considering Hastert's expert testimony as well as Plaintiff's "age, education, work experience, and [RFC]." *Id.* The ALJ considered the relevant factors, *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), and his conclusion was permissible.

Second, the ALJ did not need to hear testimony about regional job numbers in making a finding that jobs existed in significant numbers. *Contra* Doc. 17 at 10 (citing *Longgrear v. Colvin*, 26 F. Supp. 3d 1066, 1070 (D. Colo. 2014)); Doc. 24 at 8 (same). The Tenth Circuit rejects Plaintiff's position: "[T]he controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (dismissing an argument that too few jobs were available when only 385 of the 1.34 million jobs nationally were available in New Mexico); 20 C.F.R. §§ 404.1566(a) (for purposes of considering eligibility for disability insurance,"[w]ork exists in the national economy when it exists in significant numbers *either* in the region where you live or in several other regions of the country." (emphasis added), 416.966(a) (same for considering Supplemental Security Income benefits)). *Longgrear* confirms Plaintiff's position is untenable. 26 F. Supp. 3d at 1070–71 (rejecting the plaintiff's invitation to focus only on jobs available in Colorado because the focus is jobs available nationally and noting that the plaintiff never even argued that fewer than 14,000 jobs was too low a number). As a result, Plaintiff cannot establish a disability based on the number of available jobs suitable for him that the ALJ identified.

**B**

Plaintiff next asserts that the ALJ erred by failing to properly account for his limitations. Doc. 17 at 10–13. But the ALJ adequately accounted for Plaintiff's mental impairments, fibromyalgia, and migraine headaches, and his decision is supported by substantial evidence. Thus, these arguments do not provide a basis for reversal of the Commissioner's decision.

**1.** Plaintiff first argues that the ALJ's decision was erroneous because while the ALJ identified limitations in understanding and concentration at step three, the ALJ neither accounted for them when assessing Plaintiff's RFC nor explained those omissions. Doc. 17 at 10; Doc. 24 at 1. Instead, Plaintiff claims the ALJ merely equated his impairments with lack of skill. Doc. 24 at 2.

A plaintiff's mental impairments are considered at multiple steps. At step two, an ALJ rates a plaintiff's degree of functional limitation resulting from a mental impairment, considering four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). The ALJ then determines the severity of the mental impairment. *Id.* § 416.920(d). Only if an ALJ determines at step three that a plaintiff has a severe mental impairment "that neither meets nor is equivalent in severity to any listing" will an ALJ assess RFC. §§ 404.1520a(d)(3), 416.920a(d)(3). The analysis at steps two and three is different in kind from that used to determine RFC. SSR 96-8p, 1996 WL 374184, at *4 (SSA, July 2, 1996). The RFC analysis "requires a more detailed assessment by itemizing various functions" and is expressed in terms of work-related activities including the abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*; *Danette Renee G. v. Kijakazi*, No. 21-2475, 2022 WL 17338283, at *9 (D. Kan. Nov. 30, 2022). An ALJ's duty is not to state a plaintiff's mental RFC in terms of the four mental functional areas identified at step two but to make a function-by-function assessment of each of the relevant work-related mental activities. *Danette Renee G.*, 2022 WL 17338283, at *9.

At steps two and three, the ALJ assessed mild limitations in understanding, remembering, or applying information and moderate limitations in concentration, persistence, or pace. Adm. Rec. at 35. These "limitations reflect[ed] [Plaintiff's] reported symptoms as well as the occasionally observed anxious mood, flat affect, tearfulness, irritability, distractibility, tangential speech, and uncleanliness of body odor." *Id.* The ALJ found that "no greater limitations [we]re appropriate, however, due to mental status examinations generally revealing benign findings" and because Plaintiff reported activities such as "taking care of his home and daughter" and "laying carpet in his house." *Id.* The ALJ specifically noted these limitations were "not a[n] [RFC]

10

assessment." *Id.* at 35. The ALJ concluded that the medical evidence was "inconsistent with" Plaintiff's "alleged mental and social limitations." *Id.* at 38.

After step three, the ALJ accounted for Plaintiff's mild and moderate limitations consistent with the requirements under SSR 96-8p and controlling case law. *Contra* Doc. 17 at 12. The ALJ discussed these limitations extensively and, as relevant to Plaintiff's argument, found that Plaintiff could "understand, remember, and carry out simple instructions, perform non-detailed routine and repetitive tasks; maintain concentration and attention for two-hour segments over an eight-hour period; [and] make simple work related decisions." Adm. Rec. at 36. The ALJ also discussed Plaintiff's mental functioning and explained why Plaintiff was limited "to simple work with additional social and adaptive limitations." *Id.* at 38. This discussion explained which medical opinions the ALJ found persuasive and why, and detailed Plaintiff's activities of daily living, social activities, examinations, and improvement with therapy. *Id.* at 39–40. In sum, the ALJ's assessment of Plaintiff's RFC was consistent with the applicable legal standard. It was not a situation where the ALJ's assessment "did not include any mental limitations." *Contra* Doc. 17 at 10.

**2.** Similarly, Plaintiff asserts that when the ALJ assessed his RFC, the ALJ failed to consider or address his fibromyalgia and migraine headaches, Doc. 17 at 13–18; Doc. 24 at 3–5, which the ALJ had found severe at step two, Adm. Rec. at 32. At step two of reviewing a claim, the ALJ must determine whether the claimant has a severe medically determinable impairment. *Johnson v. Berryhill*, 679 F. App'x 682, 686–87 (10th Cir. 2017). At this step, "the required showing is de minimis." *Id.* at 687. "Thus, a finding that an impairment is severe at step two is not determinative of the claimant's RFC and cannot substitute for a proper step-four analysis," during which the ALJ assesses the "claimant's ability to work at a given exertional level." *Id.* (citation omitted).

At step two, the ALJ found Plaintiff's fibromyalgia and migraine headaches to be severe medically determinable impairments. Adm. Rec. at 32. And at step three, the ALJ determined that Plaintiff's impairments, individually and in combination, did not "reach the level of severity contemplated in the listings." *Id.* at 33–34. The ALJ found that Plaintiff was limited to sedentary work with additional "postural, environmental, and manipulative limitations," such as prohibiting climbing, and that he should be allowed to use a cane to assist with ambulation. *Id.* at 35, 38. The ALJ further found that Plaintiff "should avoid

11

concentrated exposure to extreme heat and cold, excessive vibrations, pulmonary irritants, unprotected heights, and hazardous machinery," and "should not be an integral part of a team." *Id.* at 36. The ALJ based these findings on Plaintiff's symptoms, "the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence," and medical opinions in accordance with applicable regulations. *Id.* The ALJ noted that Plaintiff reported "difficulty walking, standing, sitting, lifting, using his hands, remembering, concentrating, and performing postural movements" due to his fibromyalgia and other impairments. *Id.* Plaintiff also reported that his migraines can send him to the emergency department and require him to lie in bed for an hour and a half. *Id.*

The ALJ determined that while objective medical evidence established that Plaintiff had been assessed with fibromyalgia and migraine headaches, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent" with the medical and other evidence. Adm. Rec. at 37. As relevant here, the record "indicate[d] [Plaintiff] complained of headaches occurring all over the head, sensitivity to light and sound, joint pain, [and] muscle pain," and was prescribed, among other medications, Cymbalta, amitriptyline, naproxen, Deltasone, and Maxalt. *Id.* The ALJ noted that Plaintiff experienced abnormal signs "at times," including "slightly reduced strength," but that, "otherwise, physical examinations regularly included benign signs." *Id.* A physical consultative examination with Dr. Paymon Savoji revealed some abnormal signs, including "reduced range of motion," but these were inconsistent with the extent of Plaintiff's alleged limitations. *Id.* The ALJ found that Plaintiff's activities of daily living—taking care of his home, remodeling a house, fixing a bike to stay more active, and laying carpet—were similarly "inconsistent with the degree of functional limitation alleged." *Id.* at 40. The ALJ also found that, based on the medical record, Plaintiff "regularly noted that his headaches [were] responsive to treatment" and that his fibromyalgia improved with Cymbalta. *Id.*

Plaintiff's argument that the ALJ "forgot" about his step two findings—that migraines were severe impairments—"and, thus, did not consider [them] at subsequent steps," Doc. 17 at 17, is inaccurate. The ALJ expressly took Plaintiff's fibromyalgia and migraines "into account" when assessing his RFC, as required by applicable regulations. *Mushero v. Astrue*, 384 F. App'x 693, 695 (10th Cir. 2010) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)). Contrary to Plaintiff's

assertions, Doc. 17 at 13, 15, the ALJ referenced fibromyalgia six times in his decision, Adm. Rec. at 32, 34, 36, 37, 40. The ALJ further "include[d] citations to evidence" concerning fibromyalgia and migraines. *E.g.*, *id.* at 37 (citing *id.* at 1221, 602–03 respectively). *Contra* Doc. 17 at 15, 17. There is also no doubt that the ALJ found fibromyalgia and migraines were severe medically determinable impairments and discussed them extensively in his decision, including when assessing Plaintiff's RFC. *Contra* Doc. 17 at 13–16, 17. And the ALJ did not merely rely on the absence of objective evidence supporting fibromyalgia in determining Plaintiff's RFC. *Contra* Doc. 17 at 13–14 (citing *Gilbert v. Astrue*, 231 F. App'x 778, 783–84 (10th Cir. 2007)); Doc. 24 at 3. Instead, the decision relies on "all of the evidence" found in the medical record, which includes *both* subjective and objective findings, as well as Plaintiff's reports on his subjective symptoms, including the severity of his symptoms and activities he was able to perform. *Gilbert*, 231 F. App'x at 784.

The ALJ also considered and addressed medical source opinions. The ALJ found the opinions of the state agency medical consultants persuasive, Adm. Rec. at 39, and these opinions expressly accounted for Plaintiff's fibromyalgia and migraines, *see, e.g.*, *id.* at 192–193. Consistent with the ALJ's findings, one of those consultants noted that Plaintiff's activities of daily living, "location, duration, frequency and intensity of [his] pain and other symptoms," and "[l]ongitudinal treatment records" helped explain the inconsistency between Plaintiff's statements about his limitations and the other evidence in the file. *Id.* at 193–94. The ALJ's findings during his assessment of Plaintiff's RFC incorporated and even expanded on the limitations contained in these physical assessments. *See, e.g.*, *id.* at 194–95. "Those findings were supported by substantial evidence in that the ALJ agreed with the findings of the agency medical consultants . . . ." *Wilson v. Astrue*, 602 F.3d 1136, 1142 (10th Cir. 2010).

Nevertheless, Plaintiff argues that the ALJ should have included in the RFC assessment "off-task time" and "some light and noise restrictions," and that the ALJ overemphasized Plaintiff's level of improvement. Doc. 17 at 18; Doc. 24 at 4–5. But the ALJ appropriately determined that Plaintiff's RFC captured limitations which were supported by the record. And the ALJ found that Plaintiff's fibromyalgia and migraines were responsive to treatment based on the entire record. Adm. Rec. at 40. As to additional limitations in the report of Plaintiff's RFC, the ALJ specifically noted that Plaintiff "complained of

13

headaches occurring all over the head, sensitivity to light and sound, joint pain, [and] muscle pain." *Id.* at 37. After considering the record as a whole, the ALJ determined the evidence did not support the severity of these and other alleged limitations. *See id.* Further, the medical consultants that the ALJ relied on did not recommend any limitations to, for example, noise. *See, e.g.*, *id.* at 161, 175. Plaintiff relies largely on his own accounts to support light and noise restrictions. Doc. 17 at 18 (first citing Adm. Rec. at 60 (Plaintiff's hearing testimony), and then citing *id.* at 1328 (2018 emergency department history provided by Plaintiff)). And the ALJ explained his reasons for finding those accounts unpersuasive. The ALJ was not required to explain every omission of every additional functional limitation that could exist. *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015). And it is not the reviewing court's position to reweigh the evidence or substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Plaintiff has failed to demonstrate that his migraines caused any further functional limitation beyond those expressed in the ALJ's assessment of his RFC.

As to improvement of Plaintiff's symptoms, the ALJ cited extensively from the record in support of his position that Plaintiff was experiencing improvement with treatment "inconsistent with his alleged limitations and his testimony of ongoing extreme symptoms." Adm. Rec. at 40. The ALJ found that Plaintiff's migraines had improved over time and based that conclusion on competent evidence in the record. *Id.* (citing *id.* at 635 ("responsive to amitriptyline" in June 2017), 796 ("headaches are stable off topamax and on cymbalta" in March 2016), 1111 (improved on topamax in July 2018), 1372 ("frequency of headache is diminishing" in September 2018), 1494 ("improvement with frequency and severity of headaches" in December 2018), 1684 ("doing well" on topiramate in November 2019)). And while Plaintiff testified at the hearing that he had headaches "daily," he also testified that the Topamax was helping "right now" and that he had not visited the emergency department for a migraine in more than eight months. *Id.* at 60. The ALJ also cited the record in support of the conclusion that Plaintiff's fibromyalgia had improved with treatment. *Id.* at 40 (citing *id.* at 796 ("has improved considerably with cymbalta . . . as have headaches" in March 2016), 1111 ("feels that [cymbalta] is helpful" in August 2018), 1761 ("arthralgias and myalgias are relatively mild" in December 2019)). While it is true that the frequency, severity, and control of Plaintiff's symptoms waxed and waned, *compare* Doc. 17 at 18 (citing Adm. Rec. at 1653 (noting in July 2019 that medication increase was

unhelpful to migraine management)) *with id.* at 1898 (reporting in July 2020 that "headache management has been very good"), it would be inappropriate to reweigh the evidence when the ALJ's decision is supported by the record. *See, e.g., Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) (declining to reweigh the evidence where substantial evidence supports the ruling).

## C

Plaintiff argues the ALJ erred by discounting Dr. Bulcock's opinions. Doc. 17 at 18–21; Doc. 24 at 8–10. But the ALJ applied the correct legal standard in evaluating Bulcock's medical opinion, and the ultimate decision is supported by substantial evidence.

"An ALJ must 'give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [Plaintiff's] medical sources." *Roy ex rel. Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). Instead, the ALJ must explain how medical opinions were considered using the factors set forth in 20 C.F.R. §§ 404.1520c(c), 416.920c(c). *Id.*

The ALJ's decision appropriately considered these factors and found Bulcock's opinion unpersuasive for two reasons. The first is because of the short duration of the treatment relationship. Plaintiff began to see Bulcock in January 2020, and Bulcock provided a medical source statement four months later. Adm. Rec. at 40, 1586–91, 1810. This was a permissible basis to discredit Bulcock's opinion. 20 C.F.R. §§ 404.1520c(c)(3) (in considering medical opinions for purposes of eligibility of disability insurance, the ALJ can consider "length of treatment relationship"), 416.920c(c)(3) (same for Supplemental Security Income benefits)).

The second concerned the basis of Bulcock's limitation opinion. *See* Adm. Rec. 39–40. In particular, Bulcock included the significant limitation that Plaintiff could "sit for a total of only two hours and stand/walk for only 45 minutes in an eight-hour work day." *Id.* at 39. (citing *id.* at 1587). For the remaining 5 hours and 15 minutes in the workday, Plaintiff would need to "lay[] down in a recliner." *Id.* at 1587.

Bulcock supported this limitation by stating that Plaintiff has generalized weakness and decreased dexterity. *Id.* at 39 (citing *id.* at 1588).

The ALJ found this limitation and Bulcock's basis for it to be unsupported by both Bulcock's "own observations" and "objective signs within the record." *Id.* at 39–40. These were permissible factors for the ALJ to consider in evaluating Bulcock's opinion. In fact, supportability, "the degree to which the physician's opinion is supported by relevant evidence" he or she presents, and consistency, the degree to which the opinion is consistent with other sources in the record, are the two most important factors the ALJ should consider. 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c).

Substantial evidence supports the ALJ's decision to discount Bulcock's opinion as unsupported by her own observations. Over the course of five examinations in early 2020, Bulcock never specifically noted any dexterity issues and weakness was specific to Plaintiff's left leg only. Adm. Rec. at 1854–55, 1872, 1883. Plaintiff also had chronic left-sided low back pain. *Id.* at 1884–85. But other than those two issues, Bulcock's exams and imaging generally revealed normal findings. *Id.* at 1810–11, 1835–36, 1842–44, 1852. Even if Bulcock's treatment record contains some support for Bulcock's extreme limitations on sitting and standing, it also supports the ALJ's determination that Plaintiff's limitations in these areas are not that severe. "The ALJ was entitled to resolve such evidentiary conflicts and did so." *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (citations omitted). The ALJ appropriately weighed this supportability factor in favor of finding Bulcock's opinion unpersuasive.

Substantial evidence in the record also supports the ALJ's conclusion that Bulcock's opinion was inconsistent with other sources. The ALJ provided more than 60 citations to the record—spanning four years—which support that Plaintiff "regularly displayed full strength with the lower extremities and normal coordination." Adm. Rec. at 39. Plaintiff identified no examples in the record where testing or examination revealed generalized weakness and decreased dexterity consistent with Bulcock's opinion. *Contra* Doc. 17 at 19–20; Doc. 24 at 8–10. Rather, the pages that he cites in an attempt to discredit the ALJ's contrary conclusion reveal that his "coordination, reflexes and gait [were] all normal," Adm. Rec. at 634; that he had normal range of motion, *id.* at 643; "no difficulty with ambulation," *id.* at 685; and no motor or sensory deficits, *id.* at 703. These sources also reveal normal strength of the lower extremities, with no weakness, *id.* at 839, 863; and

that, while Plaintiff had myalgias, he had no "arthralgias, back pain [or] gait problem," *id.* at 1113. The ALJ did not err by finding Bulcock's opinions on Plaintiff's extreme limitations in sitting and standing inconsistent with the record as a whole because that finding is supported by substantial evidence.

## D

Plaintiff finally argues that the ALJ's subjective symptom analysis was flawed. Doc. 17 at 21–27; Doc. 24 at 10–11. Specifically, Plaintiff contends that, while "the ALJ examined the evidence of record and outlined the appropriate process for evaluating [his] pain and other symptoms in his decision, [the ALJ] did not mention or discuss many of the [necessary] factors . . . and further failed to apply those factors to the evidence." Doc. 17 at 23–24.[5] Pointing to SSR 16-3p, Plaintiff asserts that the ALJ erred by finding Plaintiff's "allegations to be generally inconsistent with the record as a whole." Doc. 17 at 22; Adm. Rec. at 40. Plaintiff's assertions are incorrect. The ALJ applied the correct legal standard and evaluated relevant factors in evaluating Plaintiff's subjective symptoms. The ALJ's decision is supported by substantial evidence.

The Tenth Circuit has laid out a non-exhaustive list of factors an ALJ should consider when evaluating a plaintiff's subjective symptom allegations, including "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities . . ., and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1145 (10th Cir. 2010) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004)). According to the applicable regulations, the ALJ may also consider "daily activities;" "location, duration, frequency, and intensity" of symptoms; "precipitating and aggravating factors;" and medication and other treatments used for relief. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii)."The ALJ need not

---

[5] Plaintiff's reply alleges that "Defendant failed to respond to his Opening Brief contention that the ALJ improperly addressed subjective pain complaints," and, as a result, consents to the granting of Plaintiff's requested relief. Doc. 24 at 10. Not so. Defendant responded at length to Plaintiff's argument concerning the various factors and the ALJ's consideration of them. Doc. 23 at 13–17.

consider these factors in a formalistic way, but the substance must be there." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (citation omitted). The ALJ should also consider these regulatory factors in complying with SSR 16-3p. SSR 16-3p governs how the ALJ should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated." SSR 16-3p, 2016 WL 1119029, at *9 (Mar. 16, 2016).

The ALJ considered the relevant factors of daily activities, treatment, and other functional limitations and clearly articulated that reasoning according to SSR 16-3p. The ALJ explained that, although Plaintiff "ha[d] been assessed with fibromyalgia, migraine headaches, chronic hip impingement, right carpal tunnel syndrome and cubital tunnel syndrome, left cubital tunnel syndrome and ulnar tunnel syndrome, and asthma," "the evidence [did] not support the severity of [Plaintiff's] alleged limitations." Adm. Rec. at 37. The decision described imaging performed, medication prescribed, "physical and occupational therapy as well as bilateral hand bracing," and the results of physical examinations, which included both abnormal and benign findings. *Id.* The ALJ undertook a similar analysis for Plaintiff's mental impairments, including depression, auditory hallucinations, and crying spells. *Id.* at 38. The ALJ evaluated Plaintiff's activities of daily living—including preparing simple meals and performing household chores—and found them "inconsistent with the degree of functional limitation alleged." *Id.* at 40. Other inconsistencies included activities that Plaintiff reported, such as "taking care of his home and daughter, making jewelry, working with his uncle in remodeling a house, gardening, fixing his bike to stay more active, and laying carpet in his house," as well as social activities with his family. *Id.* The ALJ further found that Plaintiff's treatment history was inconsistent with the severity of limitations alleged. *Id.* The ALJ noted that Plaintiff "regularly reported improvement with treatment" of his migraines, fibromyalgia, right carpal tunnel syndrome and cubital syndrome, left cubital tunnel syndrome and ulnar tunnel syndrome, and mental health symptoms. *Id.*

Put simply, the ALJ did not ignore the importance of the "longitudinal record." *Contra* Doc. 17 at 24. Rather, the ALJ explained Plaintiff's allegations regarding the severity of his symptoms were inconsistent with the record over four years. *Id.* at 37–40. That is legally

18

sufficient. *Arterberry v. Berryhill*, 743 F. App'x 227, 231–32 (10th Cir. 2018); *Jason S. H. v. Kijakazi*, No. 22-1047, 2023 WL 2187167, at *9 (D. Kan. Feb. 23, 2023). The ALJ's conclusions are supported by the record.

## III

For the foregoing reasons, the Commissioner's final decision is affirmed.

It is so ordered.

Date: April 6, 2023

s/ Toby Crouse
Toby Crouse
United States District Judge